# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| MONIQUE OLGEE, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:24-cv-789 |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, MONIQUE OLGEE ("Plaintiff"), by and through her attorneys, Consumer Law Partners, LLC, complaining as to the conduct of NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*., the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 *et seq.*, and the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227 *et seq.*

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to three federal laws – the FCRA, the FDCPA, and the TCPA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1681p, 15 U.S.C. §1692, 47 U.S.C. §227, 28 U.S.C. §§1331 and 1337(a), as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides in the Western District of Texas.

**PARTIES**

4. Plaintiff is a consumer over 18-years-of-age, and a "person" as defined by 47 U.S.C. §153(39).

5. Defendant "services mortgage loans after mortgage lenders originate them."[1] Defendant regularly uses the mail, telephone, and credit reporting as means to collect upon consumers who are purportedly past due on their mortgage payments.  Defendant is a limited liability company organized under the laws of the state of Delaware, with its registered agent located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSE OF ACTION**

8. Several years ago, Plaintiff obtained a home mortgage loan through *J.P. Morgan Chase Bank, N.A.* ("Chase").

9. In 2023, Plaintiff experienced some financial hardship, causing her to fall behind on her monthly payments to Chase ("subject debt").

10. While Plaintiff's account was still delinquent, Chase transferred the servicing rights to the mortgage loan (the "account") to Defendant.

---

[1] https://www.shellpointmtg.com/welcome-to-shellpoint

11. In June 2023, Plaintiff contacted Defendant and paid the past due balances in full, thus bringing her account current.

12. For months thereafter, Plaintiff remitted timely payments to Defendant and was never late.

13. Plaintiff was taken aback, however, when she began receiving phone calls to both her cellular phone – (914) XXX-1840, and landline – (203) XXX-8639, from Defendant.

14. At all times relevant to the instant action, Claimant was the sole subscriber, owner, and operator of the aforementioned telephones. Claimant is and always has been financially responsible for the telephones and their services.

15. Upon answering Defendant's phone calls, Plaintiff is greeted by a pre-recorded and/or artificial message stating that she is behind on her mortgage and instructing her to hold a live representative.

16. Defendant has used various phone numbers when placing calls to Plaintiff, including but not limited to: (800) 365-7107 and (866) 317-2347.

17. Upon information and belief, the aforementioned phone numbers are regularly utilized by Defendant during its debt collection activities.

18. Plaintiff notified Defendant's representatives that she had made all necessary payments to Defendant, but after lengthy discussions, it became evident that Defendant was misapplying Plaintiff's payments.

19. For instance, Plaintiff has made a number of unapplied payments, as well as payments allocated to principal, but rather than applying the payments accordingly, Defendant has repeatedly misapplied the payments to escrow and interest.

20. Defendant's misapplication of payments further resulted in the imposition of late fees, despite the fact that Plaintiff was not late on her payments.

21. Plaintiff has explained this discrepancy to Defendant's representatives during several phone conversations, and Defendant's representatives have even acknowledged that Defendant misapplied her payments.

22. Rather than corrects its errors, Defendant has continued to misapply Plaintiff's payments and charge her erroneous late fees through the filing of this action.

23. Moreover, Defendant's collection calls have also persisted through the present day, which prompted Plaintiff to demand that Defendant stop calling her.

24. Plaintiff has made such requests during multiple conversations, including in or around January, March, and April 2024.

25. In spite of Plaintiff's requests, Defendant has placed not less than thirty (30) calls to Plaintiff's phone seeking collection of a balance that is not owed.

26. Fearing that Defedant's misconduct was negatively impacting her credit, Plaintiff accessed her consumer credit report through Experian Information Solutions, Inc. ("Experian") to proactively mitigate any damage.

27. Much to her dismay, however, Experian was indicating that Plaintiff was delinquent on her mortgage loan, and many of her payments were not reflected therein.

28. Accordingly, in March 2024, Plaintiff initiated an online written credit dispute with Experian in which she notified Experian that she was never late or behind on her mortgage loan with Defendant, and that Defendant was misapplying her payments.

29. Upon information and belief, Defendant received notice of Plaintiff's dispute within five days of Plaintiff initiating her dispute with Experian. *See* 15 U.S. Code §1681i(a)(2).

30. In April 2024, Experian responded to Plaintiff's dispute and indicated that Defendant verified the disputed information as accurate, and thus, the erroneous late payments remained on Plaintiff's credit file.

31. Based on Experian's response, Defendant failed to conduct a reasonable investigation and verify Plaintiff's disputed information. Had Defendant done so, the erroneous late payments would have been suppressed.

32. Despite having actual knowledge that it misapplied Plaintiff's payments, Defendant has continued to disseminate inaccurate and harmful information to third parties, including potential creditors.

33. Any reasonable investigation engaged in by Defendant would and should have revealed the blatant inaccuracies reflected in Plaintiff's credit report.

IMPACT OF DEFENDANT'S MISCONDUCT

34. Defendant's misapplication of payments, and the ensuing erroneous reporting of Plaintiff's mortgage account paints a false and damaging image of Plaintiff. Specifically, the inaccurate reporting of the mortgage account has had a significant adverse impact on Plaintiff's credit rating and creditworthiness because it misleads creditors into believing that Plaintiff has delinquent accounts that she cannot honor, and is thus a high-risk consumer.

35. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to obtain financing and to regain a firm foothold on her creditworthiness, credit standing, and credit capacity.

36. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered various types of damages as set forth herein, including specifically: invasion of privacy, loss of sleep, out of pocket expenses, the loss of credit opportunity, decreased credit score, decreased

5

credit line on her credit card accounts, frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit files, and mental and emotional pain and suffering.

37. Due to the conduct of Defendant, Plaintiff was forced to retain counsel to correct the inaccuracies in her credit files.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

38. Plaintiff repeats and realleges paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

40. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly uses the mail, telephone, and credit reporting to collect, or attempt to collect, delinquent consumer accounts.

41. Defendant identifies itself as a debt collector, and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

42. The underlying mortgage account is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.  Moreover, not only did Defendant obtain servicing rights to the debt when it was in default, but Defendant also treated the account as in default throughout its servicing of the same.

### i.    Violations of the FDCPA, §1692c(a)(1) and d

43. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

44. In addition, this section enumerates specific violations, such as:

"Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.  15 U.S.C. § 1692d(5).

45. Regulation F provides further guidance on what circumstances constitute harassing and oppressive debt collection conduct. 12 C.F.R. § 1006.14(b)(2) provides guidance on when calls are made repeatedly and continuously, and debt collectors are presumed to comply with these provisions if they follow certain guidelines. However, the commentary thereto confirms that this presumptive compliance can be rebutted by several factors, including "[t]he content of a person's prior communications with the debt collector." Examples of prior communications with consumers that can evince an intent to harass through phone calls include calls following a demand that such calls cease, and similarly following a consumer informing a debt collector that they refuse to pay the debt. Additionally, pursuant to 12 C.F.R. § 1006.14(h), a debt collector cannot "communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person."

46. Defendant violated §§ 1692c(a)(1), d & 1692d(5), and 12 C.F.R. §§ 1006.14(b)(2) & 1006.14(h) through its harassing and noncompliant collection campaign directed towards Plaintiff. Plaintiff notified Defendant that she was up to date on her payments and that Defendant was calling her by mistake, as it misapplied her payments. Plaintiff also notified Defendant to stop calling, and Defendant knew that its continued placement of phone calls would be unwelcome to Plaintiff, yet it nevertheless persisted, illustrating its intent to harass Plaintiff through its phone calls. Further, upon becoming aware of Plaintiff's desire to receive no further collection calls regarding the subject debt, Defendant was obligated to cease utilizing such medium of communication in its efforts to collect the subject debt from Plaintiff – however, such calls persisted notwithstanding

Defendant's obligation to cease. Defendant engaged in this harassing and noncompliant conduct in an effort to harass and annoy Plaintiff into submission.

47. Defendant continued to place repeated phone calls to Plaintiff's telephone with the hopes that the sustained pressure would cause Plaintiff to succumb to Defendant's efforts and remit a payment that was beyond what Plaintiff actually owed. This repeated behavior of systematically calling Plaintiff's telephone, in spite of her demands, was harassing and abusive. The frequency and volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing her.

### ii.    Violations of FDCPA § 1692e

48. The FDCPA, pursuant to 15 U.S.C. § 1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49. In addition, this section enumerates specific violations, such as:

> "The false representation of (A) the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

> "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8); and

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

50. Defendant violated §§ 1692e, 1692e(2), 1692e(8), and e(10) through its failure to allocate Plaintiff's payments as instructed. After Defendant acquired servicing rights to the delinquent mortgage loan, Plaintiff immediately brought the account current. From that point on, Plaintiff regularly remitted timely monthly payments to Defendant, but yet, Defendant continuously

misapplied Plaintiff's payments, causing her to incur unnecessary late fees, as well as derogatory late notations on her credit report. Plaintiff repeatedly explained the situation to Defendant, and Defendant's representatives even acknowledged the errors. Yet, despite Plaintiff's exhaustive efforts, Defendant continued to disseminate false and harmful information regarding Plaintiff to the credit reporting agencies, as well as third party creditors.

### iii.    Violations of FDCPA § 1692f

51. The FDCPA, pursuant to 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt.

52. Moreover, under § 1692f(1), a debt collector is prohibited from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

53. Defendant violated 15 U.S.C. §§ 1692f and f(1) when it unfairly misapplied Plaintiff's payments and attempted to collect upon a purported past due balance, when in fact, Plaintiff was not delinquent on her mortgage payments. Yet, Defendant not only continued to place repeated phone calls to Plaintiff seeking collection of the same, but Defendant also disseminated false and harmful information to Experian, and in turn, third party creditors.

54. As set forth in paragraphs 34 through 37, *supra*, Plaintiff has been harmed as a result of Defendant's unlawful collection practices as described in this Complaint.

WHEREFORE, Plaintiff, MONIQUE OLGEE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.   Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.   Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c.  Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e.  Enjoining Defendant from further contacting Plaintiff seeking payment of the subject debt; and

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

55. Plaintiff restates and realleges paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

57. Defendant is a "person" as defined by 15 U.S.C. §1681a(b).

58. Defendant is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

59. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

60. Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Experian and Plaintiff.

61. Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, provided by Experian and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

62. Had Defendant reviewed the information provided by Experian and Plaintiff, it would have corrected the inaccurate late payments and would have transmitted the correct information to Experian. Instead, Defendant wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

63. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation or reinvestigation of Plaintiff's disputes with Experian.

64. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian after being put on notice and discovering inaccurate and misleading reporting with respect to the underlying account.

65. Defendant violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information in Plaintiff's Experian credit file.

66. Defendant failed to conduct a reasonable investigation into its reporting of the account, record that the information was disputed, or delete the inaccurate information from Plaintiff's Experian credit file within 30 days of receiving notice of the dispute from Experian under 15 U.S.C. §1681i(a)(1).

67. Despite the blatantly obvious errors in Plaintiff's credit file, and Plaintiff's countless efforts to fix these mistakes, Defendant did not correct the errors or trade line to report accurately. Instead, Defendant wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's dispute to one or more third parties.

68. A reasonable investigation by Defendant would have confirmed the veracity of Plaintiff's dispute, as Defendant's representatives even acknowledged that Defendant was mistakenly misapplying Plaintiff's payments. Yet, Defendant proceeded to communicate inaccurate information to Experian and other third parties.

69. Had Defendant taken steps to investigate Plaintiff's valid disputes or Experian's request for investigation, it would have removed the negative late payments.

70. By deviating from the standards established by the debt collection industry and the FCRA, Defendant acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian.

71. As set forth in paragraphs 34 through 37, *supra*, Plaintiff has been harmed as a result of Defendant's unlawful practices as described in this Complaint.

WHEREFORE, Plaintiff, MONIQUE OLGEE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing Defendant to immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

72. Claimant repeats and realleges paragraphs 1 through 71 as though fully set forth herein.

73. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") *or* an artificial *or* pre-recorded voice without their consent (emphasis added).

74.   Defendant used a pre-recorded and/or artificial voice when placing calls to Plaintiff's cellular phone.  Upon answering Defendant's phone calls, Plaintiff was subjected to a pre-recorded and/or artificial voice informing her that she is behind on her mortgage, and instructing her to hold for a live representative.

75.   Defendant violated the TCPA by placing at least 30 phone calls to Plaintiff's cellular phone using a pre-recorded and/or artificial voice without her consent.  Any consent Plaintiff may have given to Defendant by virtue of obtaining the mortgage loan was explicitly revoked by Plaintiff's demands that it ceases contacting her.  Moreover, Defendant did not have the requisite consent to contact Plaintiff regardless, as Plaintiff was not behind on the loan.

76.  The calls placed by Defendant to Plaintiff were regarding business transactions and not for emergency purposes as defined by the TCPA under 47 U.S.C. § 227(b)(1)(A)(i).

77.   Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call.  Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff  is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).  Defendant was notified, on numerous occasions, that its calls were unwanted.  Armed with this knowledge, however, Defendant still willfully chose to continue its barrage of calls to Plaintiff's cellular phone.

WHEREFORE, Plaintiff, MONIQUE OLGEE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.   Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.   Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c.   Awarding Plaintiff costs and reasonable attorney fees;

d.  Enjoining Defendant from further contacting Plaintiff; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

DATED this 16th day of July 2024.                Respectfully Submitted,

                                        /s/ Taxiarchis Hatzidimitriadis
                                        Taxiarchis Hatzidimitriadis #6319225
                                        CONSUMER LAW PARTNERS, LLC
                                        180 N. Stetson Ave., Suite 2800
                                        Chicago, Illinois 60601
                                        (267) 422-1000 (phone)
                                        (267) 422-2000 (fax)
                                        teddy@consumerlawpartners.com

                                        *Attorneys for Plaintiff, Monique Olgee*